UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

      Plaintiff,

    V.                                          No. CR 13-3362- MCA

**STEVEN MICHAEL ALLUMBAUGH**,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came before the Court on a bench trial on December 20, 2013. Having considered the evidence admitted at trial, the arguments of counsel, the relevant law, and being fully advised in the premises, I find the Defendant, Steven Michael Allumbaugh, guilty beyond a reasonable doubt of the crimes charged in Count 1 (Theft of Government Money and Property, in violation of 18 U.S.C. § 641 and Aiding and Abetting, in violation of 18 U.S.C. § 2); and Count 2 (Receipt of Stolen Government Money and Property, in violation of 18 U.S.C. § 641 and Aiding and Abetting, in violation of 18 U.S.C. § 2), as charged in the S*uperseding Information.*

A Superseding Information was filed on December 17, 2013, and this case was tried on December 20, 2013.  Before trial, on December 17, 2013, Defendant filed a waiver of his right to a jury trial.  Following a hearing on the proposed waiver, The Court determined that Defendant knowingly and voluntarily waived this right and accepted Defendant's waiver.

I.  **BURDEN OF PROOF AT TRIAL**

Although this case was tried to the Court rather than to a jury, the following legal standards still apply.  First, the Defendant is presumed by the law to be innocent.  The law does not require a Defendant in a criminal case to prove the Defendant's innocence or to testify or to produce any evidence at all.   The Government has the burden of proving the Defendant's guilt beyond a reasonable doubt, and if it fails to do so as to any count I must acquit the Defendant as to that count.

While the Government's burden of proof is a strict or heavy burden, it is not necessary that the Defendant's guilt be proved beyond all possible doubt.  It is only required that the Government's proof exclude any "reasonable doubt" concerning the Defendant's guilt.   A "reasonable doubt" is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case.   Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that one would not hesitate to rely and act upon it in the most important of affairs.

In determining the facts, I consider only the evidence I have admitted in the case.   I also draw such reasonable inferences from the evidence as are justified in the light of common experience.

I weigh the witnesses' testimony by considering each witness' relationship to the Government or the Defendant; interest, if any, in the outcome of the case; manner of testifying; opportunity to observe or acquire knowledge concerning the facts about which the witness testified; candor, fairness and intelligence; and the extent to which the

testimony of the witness has been supported or contradicted by other credible evidence. I have also considered and determined the voluntariness of Defendant's statements to Agent Mendez.

Recognizing that a separate crime or offense is charged in each count of the *Superseding Information*, I separately consider each count and the evidence pertaining to it. The fact that I find the Defendant guilty or not guilty as to one of the offenses charged does not control my verdict as to any other charge.

I further recognize that the Defendant is not on trial for any act or conduct or offense not alleged in the *Superseding Indictment*, nor am I called upon to return a verdict as to the guilt or innocence of any other person or persons not on trial as a Defendant in this case. Also, the punishment provided by law for the offenses charged in the *Superseding Information* is not to be considered in any way in arriving at an impartial verdict as to the guilt or innocence of the Defendant.

I recognize the general rule that Government need not prove, as an essential element, that the crimes in question were committed on an exact date, so long as it proves beyond a reasonable doubt that the crimes were committed on a date that is reasonably near the dates alleged in the Superseding Information. I find that the evidence at trial fell within the time period alleged in the *Superseding Information* with respect to Count 1 and Count 2.

I further recognize that Defendant's decision not to testify or call any witnesses is not evidence of guilt.

## II.    FINDINGS OF FACT

1. On or about January 4, 2012, Thomas Allumbaugh, died. Trial Transcript, 12/20/13, at 62, 75.[1]

2. Bobbie Allumbaugh (Bobbie) is Thomas' widow and Defendant's mother. TR. at 29, 62.

3. Thomas Allumbaugh (Thomas) was eighty-seven (87) years old at the time of his death. TR. at 78.

4. The Defendant and Bobbie concealed the fact of Thomas' death. Neither reported his death to law enforcement authorities or to the Social Security Administration. TR. at 31, 62, 64, 70, 72, 75, 76.

5. At the time of trial, Bobbie was approximately eighty-five (85) years old. TR. at 78.

6. Beginning in either 1989 or 1990, Thomas began receiving social security benefits. TR. at 30.

7. At the time of his death, Thomas received Social Security retirement benefits in the approximate amount of $1,400 per month. TR. at 30, Gov't Ex. 4.

8. At the time of his death, the Social Security Administration paid Thomas via direct deposit to a joint Wells Fargo checking account (the Account) that he shared with Bobbie. Government's Trial Exhibit 12/20/13 Number 3, Gov't Ex. 5, TR. at 30-31.

9. After Thomas' death, his Social Security benefits should have ceased being paid and if his death had been reported to the Social Security Administration, the payments

---

[1] All further references to the trial transcript shall be cited as "TR."

would have stopped. TR. at 39. Neither the Defendant nor Bobbie was entitled to receive Thomas' Social Security benefits after his death. TR. at 32, 39-40.

10. Unaware of Thomas’ death, the Social Security Administration continued to pay Thomas’ monthly Social Security benefits via direct deposit into the Account. Gov't Ex. 4, TR. at 32.

11. Bobbie also received Social Security retirement benefits in the approximate amount of $500 per month, via direct deposit into the Account. TR. at 30-31, Gov't Ex. 4.

12. Prior to Thomas’ death, the Defendant helped his parents manage their finances by reviewing their account statements and helping them pay their expenses. TR. at 62-63.

13. From January 2012 through on or about January 2013, the Social Security Administration continued to pay Thomas' social security benefits which continued to be directly deposited into the Account, in the approximate amount of $1,400 per month and totaling approximately $19,537.20 during that time period. TR. at 30-38, Gov't Ex. 3, 4, 5.

14. After Thomas’ death until approximately December 3, 2012, the Defendant continued to help his mother, Bobbie Allumbaugh, manage her finances and pay bills from the money in the account. TR. at 63-64, 66, 73.

15. The Account balance on January 17, 2012 was $58.46. Gov't Ex. 4.

16. The Account balance on March 14, 2012 was $148. 01. Gov't Ex. 4.

17. The Account balance on April 13, 2012 was $46.69. Gov't Ex. 4.

18. The Account balance on May 14, 2012 was $1,033.81. Gov't Ex. 4.

19. The Account balance on June 14, 2012 was $34.19. Gov't Ex. 4.

20. The Account balance on July 16, 2012 was $5.38.   Gov't Ex. 4.

21. The Account balance on August 14, 2012 was $5.72.   Gov't Ex. 4.

22. The Account balance on September 17, 2012 was $63.34.   Gov't Ex. 4.

23. The Account balance on October 15, 2012 was $112.63.   Gov't Ex. 4.

24. The Account balance on November 15, 2012 was $106.48.   Gov't Ex. 4.

25. The Account balance on December 14, 2012 was negative $309.54.   Gov't Ex. 4.

**Checks**

26. From January 2012 through December 2012, Bobbie drew seventeen (17) checks on the Account payable to Defendant; Defendant accepted and cashed each one of the checks.   Gov't Ex. 8-13, 15-19, 21-26.

27. On January 3, 2012, a check was made payable to the Defendant in the amount of $600.   Gov't Ex. 8.

28. On February 3, 2012, a check was made payable to the Defendant in the amount of $50.00.   Gov't Ex. 9.

29. On February 17, 2012, a check was made payable to the Defendant in the amount of $45.00.   Gov't Ex. 10.

30. On March 13, 2012, a check was made payable to the Defendant in the amount of $250.00.   Gov't Ex. 11.

31. On March 14, 2012, a check was made payable to the Defendant in the amount of $75.00.   Gov't Ex. 12.

32. On May 3, 2012, a check was made payable to the Defendant in the amount of $500.00.  Gov't Ex. 13.

33. On May 23, 2012, a check was made payable to Weststar Mortgage Corp. in the amount of $1036.19, to pay the mortgage on the house Defendant lived in with Bobbie. Gov't Ex. 14.  On July 9, 2012, a check was made payable to Weststar Mortgage Corp. in the amount of $1036.19, to pay the mortgage on the house Defendant lived in with Bobbie. Gov't. Ex. 20.

34. On June 4, 2012, a check was made payable to the Defendant in the amount of $1000.00 for "Rent."  Gov't Ex. 15.

35. On June 13, 2012, a check was made payable to the Defendant in the amount of $450.00.  Gov't Ex. 16.

36. On July 3, 2012, a check was made payable to the Defendant in the amount of $170.00.  Gov't Ex. 17.

37. On July 3, 2012, a check was made payable to the Defendant in the amount of $200.00.  Gov't Ex. 18.

38. On July 6, 2012, a check was made payable to the Defendant in the amount of $100.00.  Gov't Ex. 19.

39. On August 3, 2012, a check was made payable to the Defendant in the amount of $800.00.  Gov't Ex. 21.

40. On August 10, 2012, a check was made payable to the Defendant in the amount of $200.00.  Gov't Ex. 22.

41. On September 4, 2012, a check was made payable to the Defendant in the

amount of $1,000.00 for "Rent."   Gov't Ex. 23.

42.   On October 3, 2012, a check was made payable to the Defendant in the amount of $300.00.   Gov't Ex. 24.

43.   On October 10, 2012, a check was made payable to the Defendant in the amount of $200.00.   Gov't Ex. 25.

44.   On December 3, 2012, a check was made payable to the Defendant in the amount of $700.00 for "Cash Payment for ck & Go."   Gov't Ex. 26.

### Automatic Teller Machine (ATM) Withdrawals

45.   In addition to receiving and cashing the seventeen (17) checks drawn on the Account, Defendant also withdrew money from the Account at Automatic Teller Machines.   Gov't Ex. 6 and 7.

46.   Defendant stated that after Thomas died, he began accessing the funds in the Account, via ATM withdraws in increments of $20, $40, and $200 a month and continued to help Bobbie pay for her expenses.   TR.at 63, also as documented in gov't. Ex. 6-7.

### Interviews with Agent Mendez

47.   On August 18, 2013, Social Security Administration Special Agent Bianca Mendez (SA Mendez) interviewed the Defendant as his worksite in Carlsbad, New Mexico.   TR. at 60

48.   The interview was non-custodial, non-threatening, voluntary, and cordial. TR. at 64-65.

49.   The Defendant told SA Mendez that he knew that Thomas received approximately $1,200.00 in social security benefits which were directly deposited into the

Account and that the benefits continued to be directly deposited into the Account after Thomas' death.   TR. at 62, 64.

50.   Defendant said that Bobbie also received Social Security benefits in the approximate amount of $500.00 each month, which funds were directly deposited into the Account.   TR. at 62.

51.   Defendant stated that before Thomas died, he helped Thomas and Bobbie pay their bills, but never accessed the funds in the Account.   TR. at 62-63.

52.   Defendant stated that after Thomas died, he began using the funds in the Account to pay for his own expenses as well.   TR. at 63-64, 76.

53.   Defendant stated that he accepted responsibility for spending the Social Security benefits after Thomas died, and that he would be willing to repay the amount if allowed.   TR. at 64, 70, 76.

54.   The Defendant apologized for what he did.   TR. at 66.

55.   On April 29, 2012, SA Mendez interviewed the Defendant at the Social Security Administration office in Carlsbad, New Mexico.   TR. at 66, 67.

56.    The interview was non-custodial, non-threatening, voluntary, and cordial. Gov't Ex. 1, TR. at 67.

57.    Prior to the interview, the Defendant prepared a written statement.   Gov't Ex. 2, TR. at 70-72, 74.

58.    The Defendant wrote that he knew the Social Security Administration continued to pay Social Security benefits to Thomas after Thomas' death.   TR. at 72.

59.   The Defendant wrote that he takes full responsibility for all of the money owed

"on my father's social security that should not have been paid."   Gov't Ex. 2, TR. at 72.

60.   The Defendant further wrote that he and Bobbie would review bank statements from the Account monthly and that he knew that Bobbie never applied for Social Security benefits "off my dad's records after he died.   I knew I wasn't due benefits off my dad's records.   No promises or threats were made to me."   Gov't Ex. 2, TR. at 73.

61.   The Defendant wrote that he failed to inform Social Security or the bank that Thomas died "cause death was covered up."   Gov't Ex. 2, TR. at 72.

62.   After the Defendant wrote his statement, he told SA Mendez that he knew that he was not entitled to receive Thomas' Social Security benefits and that he never reported Thomas' death to the Social Security Administration or the bank, and that he continued to receive the benefits after Thomas' death.   TR. at 75.

63.   The Defendant also told SA Mendez that after his father died, he was unemployed for several months, and that was when he started using and accessing the funds from the Account.   TR. at 76.

64.   The Defendant said he was using the funds from the Account to pay his rent and other expenses, as well as Bobbie's expenses.   TR. at 76.

65.   Defendant and Bobbie received and converted to their own use the Social Security benefits paid by the Social Security Administration on behalf of Thomas after Thomas' death.   Gov't. Ex. 4.

66.   I credit the testimony of Agent Mendez in all respects.

## III.  LEGAL ANALYSIS AND CONCLUSIONS OF LAW

### Essential Elements of the Offenses Charged

To find the Defendant guilty of Count 1, the Court must be convinced that the United States has proved each of the following beyond a reasonable doubt: (1) the Social Security benefits belonged to the United States government.  It does not matter whether the defendant knew that the Social Security benefits belonged to the United States government, only that he knew that they did not belong to him; (2) the Defendant stole or converted the Social Security benefits to his own use or gain, to the use or gain of another or the Defendant took the Social Security benefits knowing they were not his and intending to deprive the United States of the use or benefit of the Social Security benefits; and (3) the value of the Social Security benefits was more than $1,000.   18 U.S.C. § 641, 10th Cir. PJI (2011) 2.31.

To find the Defendant guilty of Count 2, the Court must be convinced that the United States has proved each of the following beyond a reasonable doubt: (1) that the social security benefits belonged to the United States government.  It does not matter whether the defendant knew that the social security benefits belonged to the United States government, only that he knew it did not belong to him; (2) that the Defendant received, concealed, or retained government property with the intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined, or converted; and (3), the value of the social security benefits was more than $1,000.   18 U.S.C. § 641.   10th Cir. PJI (2011) 2.31, *United States v. Mellen III,* 393 F.3d 175 (D.C. 2004).

Aiding and Abetting in violation of 18 U.S.C. § 2 provides that whoever commits an

offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.  Aiding and Abetting makes it a crime to intentionally help someone else commit a crime.  To find the Defendant guilty of this crime, the Government must prove each of the following beyond a reasonable doubt: (1) someone else committed to the charged crime, and (2), the Defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about.  This means that the Government must prove that the Defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help him.  The Defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting.  But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough.  Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.  10th Cir. PJI (2011) 2.06.

It is well established that aiding and abetting is not an independent crime under 18 U.S.C. § 2; it simply abolishes the common-law distinction between principal and accessory.  *United States v. Langston,* 970 F.2d 692, 705 (10th Cir.)*, cert denied,* 506 U.S. 965 (1992).  The Tenth Circuit has held that "[a] defendant can also be convicted as an aider and abettor even though he was indicted as a principal for commission of the underlying offense and not as an aider and abettor, providing that the commission of the underlying offense is also proven. *United States v. Smith,* 838 F.2d 436, 441 (10th Cir. 1988).

The Government proved beyond a reasonable doubt that the Defendant is guilty of Count I of the Superseding Information as a principal because the Government proved each element beyond a reasonable doubt. The Social Security benefits paid on behalf of Thomas, after his death, from January 2012 to January 2013, constituted money belonging to the United States government. Thomas died or about January 4, 2012 and his death was not reported to police authorities or the Social Security Administration. His Social Security benefits should have ceased at that time. Neither the Defendant nor Bobbie were entitled to those benefits after Thomas died. Defendant knew that the monies deposited in Thomas' name did not belong to Defendant or Bobbie. Through his withdrawals at the ATM machines, Defendant stole the Social Security benefits and converted them to his use. The value of the monies withdrawn from the ATM machines exceeded $1,000.

The Government proved beyond a reasonable doubt that Defendant is guilty of Count 2 of the Superseding Information as either a principal or aider and abettor because the Government has proved each element beyond a reasonable doubt. The Social Security benefits at issue constituted money belonging to the United Sates government. Defendant and Bobbie knew that the funds did not belong to them. Bobbie stole money from the Account by writing checks payable to Defendant knowing that Thomas' Social Security benefits did not belong to her or Defendant. By cashing these checks Defendant received and retained Social Security benefits to which he was not entitled, in an amount greater than $1,000. Defendant received or retained the Social Security benefits with the intent to convert the benefits to his or Bobbie's use or gain, knowing that the benefits were stolen. Defendant admitted to SA Mendez that after Thomas died, Defendant helped Bobbie

13

manage her finances and told her what checks to write to pay for both his and her living expenses, which she did. Each month after Thomas' death, Defendant and Bobbie drained the account of virtually all of its funds. After Thomas died, Bobbie wrote seventeen (17) checks to the Defendant to pay for his expenses. Defendant stated to SA Mendez that after Thomas died, Defendant was unemployed for several months and that was when he started using and accessing funds from the account. The value of the stolen money was more than $1,000 and was, in fact, approximately $19,537.20.

## IV.   CONCLUSION

I find that the value of the Social Security funds withdrawn from and taken from the Account after Thomas' death, in the aggregate, combining amounts from all counts for which Defendant is convicted exceeds $1,000.

In light of the above facts and the reasonable inferences drawn therefrom, I make the following findings as to each count of the *Superseding Information*

### Count 1

I find beyond a reasonable doubt that Defendant Steven Michael Allumbaugh is **GUILTY** of the crime charged in Count 1 of the *Superseding Information* Theft of Government Money and Property, in violation of 18 U.S.C. Section 641.

### Count 2

I find beyond a reasonable doubt that Defendant Steven Michael Allumbaugh is **GUILTY** of the crime charged in Count 2 of the Superseding Information Receipt of Stolen Government Money and Property, in violation of 18 U.S.C. Section 641 and Aiding and Abetting, in violation of 18 U.S.C. Section 2.

**IT IS, THEREFORE, ORDERED** that the Defendant is found **GUILTY** of the crimes charged in Counts 1 and 2 as charged.

**SO ORDERED** this 12th day of August, 2014, in Albuquerque, New Mexico.

                                              **M. CHRISTINA ARMIJO**
                                              CHIEF UNITED STATES DISTRICT JUDGE